89 F.3d 844
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Mercedes AGUILAR; Manuela Aragon; Magdalena Desantiago;
Desiderio Gallardo; Beatrice Garcia; Jesus
Orosco; Jesus Perez, et al.,
Plaintiffs-Appellants,
v.
SUNLAND BEEF COMPANY, INC.; Murle Schraeder; Harry
Dietrich, Defendants-Appellees.
 No. 95-15028.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 14, 1996.
Decided April 29, 1996.
 
 1
 Before: THOMPSON and KLEINFELD, Circuit Judges, and WILSON, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiffs argue that they complied with the court order to submit the non-FLSA claims to arbitration. The district court found that the plaintiffs had repeatedly violated the court's order to arbitrate the arbitrable claims and had actively interfered with the arbitrator's performance of his duties, and dismissed plaintiffs' complaint on that ground:
 
 
 4
 THE COURT: This case was filed in 1991, and the amended complaint contained three counts. Count 1, breach of contract. Count 2, Fair Labor Standards Acts violations. And Count 3, state wage claims.
 
 
 5
 For the past three years the Court has been seeking to have the arbitrator consider the issues raised under the CBA and the [Leyva] v. Certified Grocers at 593 F.2d 857, 9th Circuit, 1979, wherein the 9th Circuit construed an arbitration provision similar to that contained in the collective bargaining agreement in this case, and the Court ordered arbitration as provided in the CBA.
 
 
 6
 It is clear that both in opposing court-ordered arbitration and by failure to comply with arbitration as ordered by the Court, that the plaintiffs have repeatedly violated the Court's order, and have interfered with the appropriate duty of the arbitrator to consider the claims and to enter rulings in conformance with the agreement.
 
 
 7
 Any dispute over the breadth and scope of the arbitrator's findings, of course, could be directly addressed to this Court. But, the fact of the matter is that there is no evidence in the record that the plaintiffs were ever willing to proceed with arbitration.
 
 
 8
 And a careful review of all of the file, particularly transcript of the proceedings before the arbitrator, who was simply frustrated by the unwillingness of the plaintiffs to proceed under any set of circumstances, lead the Court to conclude that the complaint should be dismissed for violation of the Court's order.
 
 
 9
 We review the district court's finding of noncompliance with its order for clear error and its dismissal of the action for abuse of discretion. The record amply supports the district court's finding that plaintiffs repeatedly violated its order and actively interfered with performance by the arbitrator of his duties. We hold that it was not an abuse of discretion for the court to dismiss plaintiffs' complaint.
 
 
 10
 Plaintiffs had joined arbitrable claims on behalf of the named plaintiffs, with a quasi-class action under the Fair Labor Standards Act on behalf of all employees similarly situated. We considered just such a claim in Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857 (9th Cir.1979). That case establishes propositions which control this one, and the district court proceeded in accord with that case. Leyva establishes that "parties cannot avoid arbitration by combining non-arbitrable claims with ones that are proper subjects of arbitration." Id. at 860 n. 2. There is a "strong policy favoring arbitration of labor disputes." Id. at 861. Fair Labor Standards Act claims are statutory rights existing independently of the collective bargaining agreement and therefore not arbitrable, id. at 862, and a district court has discretion to stay the Fair Labor Standards Act claims while the arbitrable claims are arbitrated. Id. at 863. The court may determine that the arbitrator's findings as to what contract documents control, the hours and work pattern of the claimants, and the amount of wages paid to them, would be of valuable assistance, even if not controlling. The court also may find it efficient for its own docket and fair to the parties to have the arbitrable claims arbitrated first, instead of having the arbitrable and non-arbitrable proceedings going forward at the same time. Id. at 863-64. The district court may "consider conditioning any stay upon receipt of satisfactory assurances that the arbitration is proceeding with diligence and efficiency." Id. at 864.
 
 
 11
 The district court made precisely the kind of determination contemplated by Leyva, and obtained assurances from the parties that "there will be immediate aggressive efforts to have this matter arbitrated." The district judge expressly directed that the arbitration "proceed with diligence and efficiency":
 
 
 12
 I'm going to order that this action be stayed in its entirety and referred for arbitration under the requirements of FLSA and under the authority of the Leyva case. This is not a referral as of right, it is referral based on the rationale of that 9th Circuit case, which will give this Court an opportunity to evaluate perhaps the issues in Counts 1 and 3.
 
 
 13
 Those claims may be preempted, and in which case the motions for summary judgment would be well taken. If they are not, based on your rationale, then the Court would proceed to hear them. And I think this is in the best interests of the litigants, and certainly that of the Court, to see if any result can be obtained that's helpful to the resolution of this case.
 
 
 14
 * * *
 
 
 15
 I want the arbitrator to take a look at this. Maybe there's nothing that can be arbitrated by that entity, but if that's the case, then I should know that also.
 
 
 16
 And I need to know from the parties that there will be commitment, that there will be immediate aggressive efforts to have this matter arbitrated. Can you commit to that? [Answers are affirmative].
 
 
 17
 Even though the district court ordered arbitration on February 3, 1992, it never took place. The district court found that plaintiffs stalled and erected obstacles for a year and a half until the arbitrator gave up in disgust.
 
 
 18
 The plaintiffs' stalling technique was to demand one assurance after another, from appellees, the court, and the arbitrator, as to numerous issues, before actually proceeding with arbitration. First plaintiffs said that their claims for breach of their employment contract were not arbitrable, because they did not know the terms of the collective bargaining agreement. Plaintiffs' union did not participate in this case, and their lawyer, David Alan Dick, evidently had not obtained a copy of the collective bargaining agreement from their union. Plaintiffs sent letter after letter in which they claimed that various issues regarding scope of arbitrability had to be resolved before they would arbitrate, claimed to have reserved various rights to file additional materials and briefs, claimed to have sent materials which apparently were not sent, and sought delay because of other proceedings. In the course of this delay, the district judge issued a clarification of his order, which showed that he had taken account of the considerations specified in Leyva and obviated any risk, if there had been a risk, that the arbitration award might purport to resolve the non-arbitrable claims:
 
 
 19
 A district court may resolve questions about the jurisdiction of an arbitrator "even after the arbitrator has asserted jurisdiction over the dispute."
 
 
 20
 ... The arbitrator's findings, as well as the documents and testimony produced during the arbitration hearing, may be of valuable assistance to the court in resolving the FLSA claims.
 
 
 21
 The district court made it clear that if the arbitrator purported to act on any non-arbitrable matter, the district court could resolve questions of the arbitrator's jurisdiction subsequently, where the parties had not submitted the question of arbitrability itself to the arbitrator.
 
 
 22
 When, one and one-half years after the initial arbitration order, plaintiffs' counsel finally stood before the arbitrator, he said, "all we are willing to arbitrate now" are the claims under counts 1 and 3 of the complaint relating to the named plaintiffs. The employer's lawyer took a contrary position. The arbitrator then said that he would proceed, and try to resolve that issue later, because he did not know anything about the issue and was not in a position to resolve it prior to hearing evidence:
 
 
 23
 ARBITRATOR BERNSTEIN: Well, I think all we can do is proceed, as you suggested during our earlier discussions, and try to resolve it later on.
 
 
 24
 MR. DICK: Your Honor, we're not willing to do that. If we don't have a ruling upon that, we are back to the point where we have to go back to the court again and ask them to explain what our complaint meant.
 
 
 25
 We drafted our complaint. We stated it was on behalf of the seven named Plaintiffs. We did not draft it, our contract claims, as a class action. And we are only prepared to go forward with what the court stated.
 
 
 26
 Therefore, we need the direction from the arbitrator before we start the arbitration. Otherwise--
 
 
 27
 ARBITRATOR BERNSTEIN: I'm in absolutely no position to resolve that question now. I don't know anything about it. How can you ask me to do that?
 
 
 28
 MR. DICK: The court order is before the arbitrator as well as our complaint.
 
 
 29
 ARBITRATOR BERNSTEIN: I can resolve the matter only after I've heard the case.
 
 
 30
 MR. DICK: I guess I'm confused.
 
 
 31
 ARBITRATOR BERNSTEIN: You either want me to hear the case or you don't want me to hear case. I think we're at that point.
 
 
 32
 Do you want me to leave? I'm willing to walk out the door in two minutes.
 
 
 33
 MR. DICK: Mr. Bernstein, I would like us to have the arbitration on the issues the court ordered. The court ordered that the Plaintiffs claims under Count 1 and Count 3 be arbitrated. Count 1 and Count 3 are limited to the seven named Plaintiffs.
 
 
 34
 I'm not trying to be obstreperous. I'm trying to make sure that we are arbitrating what the court has ordered.
 
 
 35
 There is no contract to arbitrate anything further than that. You have stated that you're arbitrating pursuant to the court order.
 
 
 36
 ARBITRATOR BERNSTEIN: Are you willing to limit it to the seven people?
 
 
 37
 MR. LAMBERT: We would be willing to stipulate that we're proceeding under the court's order and whatever limits that establishes.
 
 
 38
 ARBITRATOR BERNSTEIN: Do you agree that it establishes a limit of seven people?
 
 
 39
 MR. LAMBERT: No, sir.
 
 
 40
 MR. MORALES: Mr. Arbitrator, we believe that's something that you can resolve in your decision as to whatever interpretation you want to give to that court order.
 
 
 41
 ARBITRATOR BERNSTEIN: He doesn't.
 
 
 42
 MR. MORALES: Well, you know, he can argue whatever he wants.
 
 
 43
 ARBITRATOR BERNSTEIN: He doesn't want to. I'm afraid I'm going to have to call this matter to a halt, and I'm leaving.
 
 
 44
 MR. MORALES: Mr. Arbitrator, if you decide to do that, my request is that a statement be made as to the reasons why you made that decision, and that you would permit the employer to make a statement on the record in that connection.
 
 
 45
 ARBITRATOR BERNSTEIN: All right. Let me make a preliminary statement.
 
 
 46
 In light of this, for me, final situation, which seems to be needless and ridiculous, it seems to be impossible to proceed, and I've decided that I'm going to depart from these proceedings.
 
 
 47
 The arbitrator gave the parties an opportunity to make a statement. The employees' lawyer said that he wanted a "clear statement that this is limited to the seven named plaintiffs," and "we decline to arbitrate" whatever claims might exist on behalf of the other persons similarly situated. The arbitrator then said "I call this proceeding to a halt, and I'm leaving."
 
 
 48
 Appellants argue that the court did not order the parties to arbitrate the purported contract claims of persons similarly situated to the named plaintiffs, and therefore, they were justified in refusing to arbitrate those claims. We need not decide whether the arbitration order extended to contract claims arguably brought by those other than the named plaintiffs. Appellants may be correct in their contention. It does not matter. They refused to arbitrate whatever claims might be arbitrable, because controlled by the collective bargaining agreement, on behalf of the named plaintiffs. More specifically, the lawyer for the named plaintiffs conditioned his willingness to arbitrate those claims on numerous undertakings by the employer, and then further conditioned his willingness to arbitrate on a favorable ruling from the arbitrator when the arbitrator did not yet know enough about the proceeding to make any ruling at all. Appellants have brought to our attention no authority entitling them to control the order in which the district court and the arbitrator decide the issues which were before them in this case. The plaintiffs' conditioning of their willingness to arbitrate upon the arbitrator's submission to the plaintiffs' demand for a ruling before the arbitrator had sufficient familiarity with the matter to issue a ruling amounted to a refusal to arbitrate.
 
 
 49
 Appellants next argue that the district court had no authority to require arbitration at all. Under Leyva, the contention lacks merit. Appellants' argument seems to be that they may assert claims for breach of their employment contract independently of the collective bargaining agreement, because they did not participate individually in making that agreement and it amounts to a contract of adhesion. It is fundamental as a matter of labor law that "federal law not only preempts [the employee's] contract claim, but also supplants it with the federal claim. [The employee's] individual labor contract is only enforceable under the CBA." Young v. Anthony's Fish Grotto's, Inc., 830 F.2d 993, 998 (9th Cir.1987); Stikes v. Chevron USA, Inc., 914 F.2d 1265, 1267 (9th Cir.1990). The contention that a collective bargaining agreement is an unenforceable contract of adhesion is meritless in light of well established authority precisely to the contrary. Waggoner v. Dallaire, 649 F.2d 1362, 1367 (9th Cir.1981); Operating Engineers Pension Trust v. Giorgi, 788 F.2d 620, 622-23 (9th Cir.1986).
 
 
 50
 The main principle underlying federal labor legislation is that collective bargaining is the best means of securing and maintaining industrial peace. The district court's holding is contrary to this principle. Under the district court's legal theory, almost all union contracts would be unenforceable since standardized contracts are commonplace in modern labor relations and all concessions won by unions from employers result from unions employing their bargaining strength on strategically chosen issues. Moreover, the court's finding that the union possessed superior bargaining strength is contrary to the rule in this circuit that parties to a collective bargaining agreement are conclusively presumed to have equal bargaining strength.
 
 
 51
 Waggoner v. Dallaire, 649 F.2d at 1367.
 
 
 52
 Plaintiffs also contend that the court lacked authority to order arbitration because of the $100,000 limit in 28 U.S.C. § 652. This contention is meritless because the arbitration was ordered based upon the collective bargaining agreement and 9 U.S.C. § 2, not upon 28 U.S.C. §§ 651 and 658.
 
 
 53
 Appellants argue that dismissal of the entire complaint was not warranted, because any noncompliance was well intentioned and not willful. We understand the judge's determination to mean that plaintiffs' refusal was willful. The record amply supports this determination. Plaintiffs' excuse for not arbitrating was that the arbitrator might exceed the boundaries of what the court submitted for arbitration. Refusal to arbitrate on this basis was not justified because there is an exception to the general rule of deference to an arbitration award "when the arbitrator exceeds the boundaries of the issues submitted to him." Van Water & Rogers, Inc. v. Int'l Bros. of Teamsters, 56 F.3d 1132, 1135 (9th Cir.1995), and the judge had indicated to counsel that they could arbitrate secure in the knowledge that he was aware of the exception and would apply it if necessary.
 
 
 54
 The district court gave considerable weight, as was appropriate, to "the public's interest in expeditious resolution" of this labor litigation, as well as the court's need to manage its docket. Defendants were subject to extended and needless abuse and litigation expense on account of the plaintiffs' willful refusal to arbitrate. Although dismissal is a harsh penalty, it was not an abuse of discretion for the district court to grant dismissal in this case of willful disobedience. See Malone v. United States Postal Service, 833 F.2d 128, 130 (9th Cir.1987).
 
 
 55
 The district court might have chosen to exercise its discretion to dismiss only the contract claims submitted to arbitration, and then might have adjudicated the Fair Labor Standards Act claims which had not been submitted for arbitration. But there are two reasons why it was not an abuse of discretion for the district court to dismiss even the non-arbitrable claims. First, there had been a willful, extended, and repeated refusal to obey the court's orders in this litigation. Second, the district court had made a determination that "the arbitrator's findings, as well as the documents and testimony produced during the arbitration hearing, may be of valuable assistance to the court in resolving the FLSA claims." By refusing to submit to arbitration of the contract claims, plaintiffs' lawyer had deprived the court of this "valuable assistance."
 
 
 56
 Appellees have requested attorney's fees pursuant to Federal Rule of Appellate Procedure 38, on the ground that the appeal is frivolous. The 1994 amendment to Rule 38 requires a "separately filed motion or notice from the court and reasonable opportunity to respond." Accordingly, appellees may file such a motion within 30 days of the date this disposition is filed.
 
 
 57
 AFFIRMED.
 
 
 
 *
 The Honorable Stephen V. Wilson, United States District Judge for the District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3